## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**AKEEM S. COLLINS,**

      **Petitioner,**

**v.**                                 **Case No. 3:22cv5754-LC/MAF**

**STATE OF FLORIDA,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On April 26, 2022, Petitioner Akeem S. Collins, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On July 17, 2023, Respondent filed an answer, with exhibits. ECF No. 22. Petitioner Collins has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 21.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By Information filed July 2, 2018, the State of Florida charged Petitioner Akeem Collins with one count of lewd or lascivious exhibition in the presence of an employee of the Department of Corrections (DOC), a third degree felony, in violation of section 800.09(2), Florida Statutes, in connection with events that occurred on or about January 19, 2017, at the Walton Correctional Institution.  Ex. 16; Ex. 27 at 5.[1]  At the time of the offense, Collins was an inmate at the Walton Correctional Institution; the sentence he was serving ended September 29, 2017, and he was released from DOC.  *See* Ex. 8 at 1.  He was arrested for the instant charge on June 16, 2018, at the Walton County Jail, after being extradited from Franklin County, Ohio.  *See* Ex. 1; Ex. 2; Ex. 30 at 6.

Collins proceeded to a jury trial on January 15, 2019, and he represented himself.  *See* Ex. 9 at 35-45.  A video of the incident that resulted in the charge was admitted into evidence as State Exhibit 1 and played for the jury; Collins said he was not the person in the video.  *See* Ex. 9 at 55-56, 62-65, 67.  The DOC employee identified Collins as the inmate in the video, exposing himself and masturbating, while looking directly at her.  *Id*. at 61,

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 22.

68.  The jury found Collins guilty as charged.  On February 19, 2019, the court sentenced him to five years in prison.  Ex. 16.

Collins appealed to the First District Court of Appeal (First DCA), assigned case number 1D19-694, and appointed counsel filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. 17.  Collins filed a pro se brief.  Ex. 18.  The First DCA ordered supplemental briefing on whether Collins' "due process rights were violated during jury selection," citing Muhammad v. State, 782 So. 2d 343 (Fla. 2001).  Ex. 19.  Collins' counsel filed a supplemental brief, Ex. 20, and the State filed an answer, Ex. 21.  On February 13, 2020, the First DCA affirmed the case per curiam without a written opinion.  Ex. 22; Collins v. State, 290 So. 3d 893 (Fla. 1st DCA 2020) (table).  The mandate issued March 12, 2020.  Ex. 22.

On April 3, 2020, Collins filed a petition for writ of prohibition in the First DCA, assigned case number 1D20-1168.  Ex. 23.  He ultimately filed an amended petition alleging the delay before his arrest was unreasonable and violated due process.  Ex. 24.  On November 24, 2020, the First DCA denied the petition on the merits, without explanation.  Ex. 25 at 1-2.  Collins filed a motion for rehearing. Ex. 25 at 3-4.  On January 15, 2021, the First DCA denied the motion for rehearing.  Ex. 25 at 5.  Collins sought review in the Florida Supreme Court, and by order on April 20, 2021, that court dismissed

the case, assigned number SC21-581, explaining it lacks jurisdiction to review an unelaborated decision from a district court of appeal.  Ex. 26.

Also on April 3, 2020, Collins filed a motion to discharge in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.191, asserting that more than 180 days had elapsed between the date he could have been arrested and the date of his trial, and he is entitled to immediate release.  Ex. 27 at 1-4.  In an order rendered April 16, 2020, the state trial court denied the motion, explaining Collins should have raised this claim on direct appeal.  Ex. 28.  Collins appealed to the First DCA, assigned case number 1D20-1364, and by order on September 20, 2022, that court dismissed the case because Collins did not file an initial brief.  Ex. 29.

In the meantime, on July 15, 2020, Collins filed a motion for post-conviction relief, pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. 30 at 33-49.  He ultimately filed an amended Rule 3.850 motion raising six claims, including three claims of ineffective assistance of counsel.  *Id*. at 67-86.  By order rendered September 9, 2021, the state post-conviction trial court summarily denied relief.  *Id*. at 1-9 (exclusive of attachments).  Collins filed a motion for rehearing, Ex. 31 at 1-3, which the court denied by order on October 4, 2021, *id*. at 4-5.

Collins appealed to the First DCA, assigned case number 1D21-3037, and no briefs were filed. *See* ECF No. 22 at 9. On March 16, 2022, the First DCA affirmed the case without a written opinion. Ex. 32; <u>Collins v. State</u>, 335 So. 3d 1182 (Fla. 1st DCA 2022) (table). The mandate issued April 13, 2022. Ex. 32.

In the meantime, on March 10, 2021, Collins filed a petition for writ of habeas corpus in the state trial court, asserting his Sixth Amendment right to a speedy trial had been violated because of the 16-month delay by the State in arresting him. Ex. 33. By order rendered March 23, 2021, the state court denied relief, explaining Collins' claim "clearly attacks the conviction and sentence that led to [his] incarceration" and "is also a claim that [he] should have raised on direct appeal." Ex. 34.

Collins appealed to the First DCA, assigned case number 1D21-1143, and he filed an initial brief. Ex. 35. The State filed an answer. Ex. 36. On September 14, 2022, the First DCA affirmed the case without a written opinion. Ex. 37; <u>Collins v. State</u>, 347 So. 3d 332 (Fla. 1st DCA 2022) (table). The mandate issued October 12, 2022. Ex. 37.

As indicated above, on April 26, 2022, Collins filed this § 2254 petition. ECF No. 1. He raises four grounds, including one alleging ineffective assistance of counsel (IAC):

(1) **Trial Court Error – Procedural Due Process/Speedy Trial Violation**: "Petitioner's procedural due process rights to a speedy prosecution [were] violated by the State when the State failed to issue its warrant or capias within a timely fashion after its investigation had been completed or before Petitioner had been released from the State's custody on 9-29-2017." *Id*. at 9.

(2) **Trial Court Error – Denial of Motion to Dismiss**: "It is a fact that [the] trial motion to dismiss demonstrated all prejudice done to the Defendant in the impairment of his defense due to prosecutorial delay in providing Defendant a speedy prosecution." *Id*. at 11.

(3) **IAC – No Relief Sought for Speedy Trial Violation**: "Pretrial Counsel was ineffective in her failure to seek relief under Speedy Trial Rule 3.191 Fla. R. Crim. P. Violation." *Id*. at 13.

(4) **Trial Court Error – Manifest Injustice**:  "It was error to physically force Petitioner to stand trial knowing that his ability to properly defend had been impaired due to [the] State's delay in arrest." *Id*. at 15.

On July 17, 2023, Respondent filed an answer, with exhibits.  ECF No. 22.

Petitioner has not filed a reply, although he was given the opportunity to do

so.  *See* ECF No. 21.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.*

For IAC claims, the United States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

As an initial matter, Collins was released from incarceration less than a month after he filed this § 2254 petition. *See* ECF No. 14; https://fdc.myflorida.com/offenderSearch (website for Florida Department of Corrections indicating Collins' release date of May 19, 2023). "[A] habeas

petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still presents a case or controversy under Article III, § 2, of the United States Constitution, and therefore is not moot." Mattern v. Sec'y for Dep't of Corr., 494 F.3d 1282, 1285 (11th Cir. 2007). *See* Spencer v. Kemna, 523 U.S. 1, 7 (1998) ("Throughout the litigation, the plaintiff 'must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" (citation omitted)). "In other words, once a habeas petitioner has been released from imprisonment, the petitioner must establish that 'some 'collateral consequence' of the conviction' exists." Mattern, 494 F.3d at 1285 (quoting Spencer, 523 U.S. at 7). The U.S. Supreme Court "has determined that wrongful convictions can have continuing collateral consequences" *id.*, and has explained that "[i]n recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur," Spencer, 532 U.S. at 8. *See, e.g.*, Sibron v. New York, 392 U.S. 40, 55-58 (1968). Accordingly, because Petitioner Collins seeks to have his conviction vacated, *see* ECF No. 1 at 24, his action is not mooted by his release from incarceration. *See, e.g.*, Bostick v. Crews, No. 4:11cv566-RH/CAS, 2014

WL 4983546 (N.D. Fla. Oct. 6, 2014) (district court order adopting Report and Recommendation which had explained, among other things, petitioner had completed his prison term after he filed habeas petition but habeas case was not moot because petitioner challenges his conviction); Verity v. Florida, No. 2:12cv117-FtM-29DN, 2014 WL 1285898 (M.D. Fla. Mar. 31, 2014) (district court order disagreeing with contention that habeas claim was mooted by release from incarceration:  "Completion of a criminal sentence does not automatically render a petition for habeas relief moot because there could be collateral consequences of a wrongful conviction, thus satisfying the case-or-controversy jurisdictional requirement of Article III of the Constitution. . . . [T]o the extent Petitioner seeks relief from the underlying aggravated manslaughter conviction, there are still collateral consequences that could flow from this conviction, such as the denial of Petitioner's right to carry a firearm, and the Court disagrees with Respondent' assertion that [the claim] is moot."); Leonard v. Inch, No. 4:20cv10005-King/Brannon, 2021 WL 1842287 (S.D. Fla. April 12, 2021) (Report and Recommendation explaining, "[W]hen a criminal defendant or habeas petitioner challenges his *conviction*, as opposed to merely his expired *sentence*, federal courts presume the existence of collateral consequences staving off a dismissal for mootness. That presumption is applicable given the nature of Petitioner's habeas

claims, so even if his release from prison does not involve continued probation or supervision, it does not moot the case." (citations omitted)), adopted by order (S.D. Fla. May 7, 2021), 2021 WL 1840584.

In his petition, Collins essentially argues the delay – between the conclusion, in 2017, of the investigation of the January 2017 incident resulting in the criminal charge in this case and his arrest in June 2018 – violated his right to a speedy trial and caused prejudice such that the prosecution should not have been allowed to occur.  As set forth below, his arguments lack merit and his petition should be denied.

### <u>Ground 1</u>:  Trial Court Error – Procedural Due Process/ Speedy Trial Violation

### <u>Ground 2</u>:  Trial Court Error – Denial of Motion to Dismiss &

### <u>Ground 4</u>:  Trial Court Error – Manifest Injustice

In these three grounds, Petitioner Collins argues his right to due process and speedy trial was violated due to the passage of time between the conclusion of the investigation and his arrest, and this also resulted in prejudice to him in preparation of his defense.  In Ground 2, he asserts the trial court should have granted his motion to dismiss the case on this basis.

Respondent indicates Petitioner Collins first raised the pre-arrest delay issue in his pro se "Trial Motion to Dismiss," filed a few days before his trial

started.  Ex. 8.  The motion includes citations to Florida Rule of Criminal

Procedure 3.190 as well as the Due Process Clause of the Fifth Amendment

to the U.S. Constitution and the Due Process Clause of the Florida

Constitution.  *Id*. at 1-2.  The motion also includes citations to cases from

Florida as well as a U.S. Supreme Court case, United States v. Marion, 404

U.S. 307 (1971), and a 1978 note in the Duke Law Journal titled "Better

Never than Late:  Pre-Arrest Delay as a Violation of Due Process," attached

to the motion as Exhibit A.  *Id*. at 3-4.

The trial court heard Collins' argument on the motion after the State

rested its case.  Ex. 9 at 107-11.  In particular, the Collins argued:

> [I]f the Court can please consider the motion because it
> was based off of pre-arrest delay.  All the elements that's
> required were added into the motion discussing the pre-arrest
> delay wherefore, Your Honor, the defendant, you know, he was
> in custody of course after this incident took place for nine months
> and no arrest was made or issued – or arrest warrant issued and
> then four months later when he was released from custody, for
> four months while on the street in society, no arrest warrant was
> issued again and the defendant will state that he was prejudiced
> by the mere fact of material evidence such as DNA samples,
> fingerprinting.  They could have proved the defendant innocent
> as well as material evidence of testimony of witnesses from the
> dormitory who could have testified as evidence to also prove that
> the defendant was not the inmate in the video and thereby the
> defendant will state that he felt he was prejudiced under the Fifth
> Amendment due process clause of the United States because
> those – like I said, those pieces of evidence we would have never
> even made it this far if counsel that was appointed, Ms. Frankie
> White, would have, you know, argued the pre-arrest delay either
> at arraignment or before or sometime after we wouldn't even

have made it this far because technically we didn't have anymore real evidence to fight with. She took this case and she didn't have nothing to fight with. She admitted it herself to me that she didn't have anything to fight with. The State had a video. She said it was an open and closed case. My counsel said it was an open and closed case because the State had a video. But we had nothing to fight with.

*Id*. at 107-08; *see id*. at 27-28. The court denied the motion, stating:

For the record, the post-trial position to dismiss has been considered by the Court. Also at this point we're at the end of the State's case and there's been a direct eye witness who has testified and has identified the defendant as the person in the video. There is a video that has been shown to the jury and it's a matter of fact for the jury to decide. So I filed all your pleadings along with that law review article, your case law, and your argument with the clerk. That will be part of the record.

. . . .

. . . It will be made part of the record. Your motion will be respectfully denied and now we'll bring the jury in and let you rest in front of them, Mr. Richardson [the prosecutor].

*Id*. at 108-09.

As indicated above, in the direct appeal, appointed counsel filed an Anders brief, Ex. 17, and Collins filed a pro se brief, Ex. 18. The First DCA ordered supplemental briefing on a different issue. Ex. 19. Collins' counsel filed a supplemental brief, Ex. 20, and the State filed an answer, Ex. 21. On February 13, 2020, the First DCA affirmed the case per curiam without a written opinion. Ex. 22; Collins v. State, 290 So. 3d 893 (Fla. 1st DCA 2020) (table).

Respondent asserts Collins' arguments in the trial court and in his pro se initial brief were "insufficient to exhaust a Fourteenth Amendment Due Process Clause claim." ECF No. 22 at 27. Respondent further asserts the direct appeal constituted Collins' only opportunity to exhaust his pre-arrest delay arguments, and thus his arguments are unexhausted. *Id*.

Even assuming Collins has exhausted his pre-arrest delay arguments, such arguments lack merit, as Respondent indicates. *See* ECF No. 22 at 28-32. In United States v. Marion, 404 U.S. 307 (1971), cited by Collins, three years passed between the acts giving rise to the charges and the filing of the indictment. *Id*. at 308. The defendants moved to dismiss the indictment "for failure to commence prosecution of the alleged offenses charged therein within such time as to afford (them their) rights to due process of law and to a speedy trial under the Fifth and Sixth Amendments to the Constitution of the United States." *Id*. at 309. "No evidence was submitted," *id*., and "[n]o specific prejudice was claimed or demonstrated," *id*. at 310. The district judge "dismissed the indictment 'for lack of speedy prosecution' at the conclusion of the hearing and remarked that since the Government must have become aware of the relevant facts in 1967, the defense of the case 'is bound to have been seriously prejudiced by the delay of at least some three years in bringing the prosecution that should have

been brought in 1967, or at the very latest early 1968." *Id*. at 310.   The Government appealed directly to the U.S. Supreme Court, *id*. at 311, which reversed the judgment of the district court, *id*. at 313-26.

The U.S. Supreme Court explained "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.'" *Id*. at 313.   The Court acknowledged that "[i]nordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense," but "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *Id*. at 320.   The Court "decline[d] to extend the reach of the amendment to the period prior to arrest," explaining:

> Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation:  his situation does not compare with that of a defendant who has been arrested and held to answer.  Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself.  But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context.  Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case.

*Id*. at 321-22 (footnote omitted).  The Court further explained that "[t]he law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between a crime

and arrest or charge," specifically statutes of limitation; thus, there is "no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." *Id*. at 322-23.

The Court noted, however, that "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial [1] that the pre-indictment delay in this case caused substantial prejudice to [the defendants'] rights to a fair trial and [2] that the delay was an intentional device to gain tactical advantage over the accused." *Id*. at 324. The Court explained that neither defendant "was arrested, charged, or otherwise subjected to formal restraint prior to indictment" and "[i]t was this event, therefore, that transformed the appellees into 'accused' defendants who are subject to the speedy trial protections of the Sixth Amendment." *Id*. at 325. The Court concluded the indictment occurred within the statute of limitations and defendants had not sufficiently shown the pre-indictment delay violated the Due Process Clause by resulting in substantial prejudice to the defense or that the Government intentionally delayed to gain a tactical advantage:

> The 38-month delay between the end of the scheme charged in the indictment and the date the defendants were indicted did not extend beyond the period of the applicable statute of limitations here. Appellees have not, of course, been

able to claim undue delay pending trial, since the indictment was brought on April 21, 1970, and dismissed on June 8, 1970. Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

*Id*. at 325-26.

In a subsequent case, the U.S. Supreme Court addressed whether a delay of eighteen (18) months between the offense and the indictment deprived a defendant of due process, warranting dismissal of the indictment. United States v. Lovasco, 431 U.S. 783 (1977). The Court explained that "proof of prejudice is generally a necessary but not sufficient element of a due process claim" and "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id*. at 790. The Court further explained:

[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of

fairness and to "disregard the limits that bind judges in their judicial function."

*Id*.  Among other things, the Court pointed out that "requiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases" and "[t]he decision to file criminal charges, with the awesome consequence it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest."  *Id*. at 794.  The Court held "that to prosecute a defendant following an investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."  *Id*. at 796.  *See, e.g.*, Stoner v. Graddick, 751 F.2d 1535, 1542 (11th Cir. 1985) (explaining that "[t]he thrust of binding precedent in this circuit requires the defendant to show both actual prejudice *and* deliberate prosecutorial delay to gain tactical advantage").

In Stoner, an appeal from the denial of a § 2254 petition, the Eleventh Circuit rejected an argument that a 19-year delay between a church bombing and the resulting criminal indictment violated petitioner's Fourteenth Amendment due process rights.  751 F.2d at 1540.  The court explained the indictment occurred within the applicable statute of limitations:

> The people of Alabama, through their elected representative, decided that those guilty of bombing churches and committing other capital offenses would be punished even 19 years after the commission of the crimes. Alabama law, as expressed through the statute of limitations in force at the time of the bombing . . . , provides for the prosecution at issue in this case.

Id. at 1540. The court further explained that "[w]hen the statute of limitations is constitutional, the Constitution places a very heavy burden on a defendant to show that pre-indictment delay has offended due process." *Id*. The court acknowledged that "the Speedy Trial Clause is inapplicable where, as here, the delay concerns a period of time prior to indictment, information, or arrest." *Id*. at 1541. The court explained that because Stoner did not carry his burden of proving "intentional delay for tactical advantage," his due process claim failed. *Id*. at 1543. The court held, alternatively, that "Stoner was not substantially prejudiced by the delay" of more than 19 years. *Id*.; *see id*. at 1544-47.

In this case, the State charged Collins with lewd or lascivious exhibition in the presence of a DOC employee, a third degree felony, in violation of section 800.09(2), Florida Statutes, in connection with events that occurred on or about January 19, 2017. Ex. 3. In Florida, a prosecution for a felony, other than a capital felony, a life felony, or a first degree felony, must be commenced within three years after it is committed. § 775.15(2)(b), Fla. Stat. (2016). Here, as set forth above, seventeen (17) months elapsed between

the date of the offense and Collins' arrest on June 16, 2018; the indictment was filed sixteen (16) days after his arrest, on July 2, 2018.  Thus, Collins had no statute of limitations defense to the charge.  *See, e.g.*, United States v. Ewell, 383 U.S. 116, 122 (1966) ("[T]he applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges.").

As to the Fifth Amendment due process claim, Collins has not shown that (1) the pre-arrest/pre-indictment delay caused substantial prejudice to his right to a fair trial and that (2) the State intentionally delayed his arrest/indictment to gain a tactical advantage.  *See* Marion, 404 U.S. at 324.  "[T]his standard is an exceedingly high one."  Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984).

Collins asserts that "[t]he State had a duty to lodge a detainer on [him] in order to secure a fair and speedy trial, before [his] release from prison and thus violated [his] due process rights and prejudiced his defense."  ECF No. 1 at 18.  It is not clear how his release from prison months after the incident would have affected his defense, however, and he does not further explain this assertion.  As in Stoner, the delay here concerns the time period prior to arrest or indictment, thus "the Speedy Trial Clause is inapplicable."  Stoner, 751 F.2d  at 1541.  *See, e.g.*, U.S. v. Butler, 792 F.2d 1528, 1533 ("The sixth

amendment right to a speedy trial applies only after a defendant has been arrested, charged, or indicted." (citing <u>Marion</u>, 404 U.S. at 312-13)).  Notably, in this case, the record also reflects that at a trial court proceeding on September 20, 2018, Collins' then-counsel waived speedy trial.  Ex. 4.

Collins also asserts that "the State delayed in arrest after its investigation had been completed and as a result [he] lost all exculpatory evidence that would have been collected in favor of [him] such as fingerprints from water fountain and DNA evidence from floor of crime area as well as inmate witnesses who were awake in the dormitory on the day [he] was accused."  ECF No. 1 at 18.  Although he asserted to the trial judge that he was not the inmate in the video of the incident, Ex. 9 at 64-65, Collins does not identify any specific witnesses or explain why they were not available to testify, *see* ECF No. 1.  *See, e.g.*, <u>United States v. Radue</u>, 707 F.2d 493, 495 (11th Cir. 1983) ("'Speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the [required] actual prejudice.'") (quoting <u>United States v. Butts</u>, 524 F.2d 975, 977 (5th Cir. 1975))).

In addition, the DOC employee testified at trial and identified Collins as the inmate in the video.  Ex. 9 at 67-68, 72-73.  Collins cross-examined the DOC employee.  *Id*. at 69-72.  Collins also questioned the DOC investigator,

James K. Maloney, at trial about whether any fingerprints or DNA were collected, and the investigator testified he did not do that. *See id*. at 100-01. On redirect, the prosecutor asked whether Collins resided in the pod where the incident depicted on the video took place and the investigator answered "[y]es." *Id*. at 104. Given that Collins resided in the pod where the incident occurred, as well as the existence and admission into evidence of the video of the incident, it is not clear how any loss of "exculpatory evidence," such as fingerprints and DNA, would have prejudiced Collins' defense.

Further, Collins has not shown the State intentionally delayed arresting him to gain a tactical advantage. The record contains a DOC Office of Inspector General Inquiry Summary Report, for Inquiry 17-01138, stating:

> On or about January 20, 2017, the Department of Corrections, Office of the Inspector General received a report, via the Management Information Notes System (MINS), in which Correctional Officer [ ], Walton Correctional Institution, reported on January 19, 2017, while assigned as A – Dormitory housing officer, she observed Inmate Akeem Collins, DC #T45833, standing by the water fountain, facing the Officers' Station, stroking his exposed, erect penis with his right hand, in a back and forth motion while staring directly at her. Upon initial review of the information, the Office of the Inspector General, District 1 Field Office, assigned an inquiry investigation to Law Enforcement Inspector James K. Maloney.

Ex. 1 at 6. This report is dated May 1, 2017, and shows the date of assignment as March 30, 2017. *Id*. Attached to the report is a Narrative of Evidence/Property, providing:

> On February 3, 2017, Correctional Officer Darcy Chaney
> recovered the fixed wing video from A – Dormitory in reference
> to the above allegations and placed the video disc into the
> temporary evidence storage locker on February 4, 2017.

*Id*. at 8.  The inquiry was upgraded to a criminal investigation on either April

24, 2017, or May 1, 2017.  *See id*. at 9 (The Case Opening Report indicates

that "[o]n May 1, 2017, inquiry 17-01138 was upgraded to a criminal

investigation."); *id*. at 12 (The Investigative Report indicates "[o]n April 24,

2017, inquiry 17-01138 was upgraded to a criminal investigation.").

The DOC investigator testified at the trial that he was assigned the

case, he collected the surveillance video, and he met with Collins.  Ex. 9 at

80-82; see Ex. 1 at 10-12 (Florida DOC Office of the Inspector General

Investigative Report).  The investigator testified that Collins "did not wish to

answer any of [his] questions and as he was leaving he made the

spontaneous utterance that [the DOC employee] was – that she instigated

the situation and when he did not get off on her, she became mad and told

on him."  *Id*. at 83; *see* Ex. 1 at 12.  Collins cross-examined the DOC

investigator; Collins did not question him about any delay. Ex. 9 at 84-103.

Nothing indicates the delay in arresting Collins resulted from deliberate

action by the State.  Collins states in his supporting memorandum that the

State took "8 months from the time of the alleged offense, to complete its

investigation and 5 additional months to obtain a warrant on 1-23-2018" and

he "was arrested during a traffic violation stop on May 26, 2018 in Columbus, Ohio." ECF No. 1 at 19.

The record reflects the arrest warrant was applied for and sworn on August 31, 2017, by Investigator Maloney. Ex. 1 at 1-2. The Probable Cause Narrative indicates Collins' "tentative release date is 09/27/2017." *Id*. at 2. The warrant was recommended on December 14, 2017, by the assistant state attorney. Ex. 1 at 13. Collins was arrested on June 16, 2018, at the Walton County Jail, after being extradited from Franklin County, Ohio. *See* Ex. 1 at 1-2, 4-12; Ex. 2 at 1-4, 5; Ex. 30 at 6. Nothing indicates the State intentionally delayed prosecuting or arresting Collins to gain a tactical advantage. *See* Butler, 792 F.2d at 1534 ("The government's inaction in bringing the case is insufficient, standing alone, to establish that the government's actions were motivated by an attempt to gain a tactical advantage.").

Based on the foregoing, assuming exhaustion, Collins' claims alleging his rights to due process and speedy trial were violated due to the passage of time between the conclusion of the investigation and his arrest, and this also resulted in prejudice to him in preparation of his defense, and, further, that the trial court should have granted his motion to dismiss the case on this basis, all lack merit. Accordingly, Grounds 1, 2, and 4 should be denied.

### **Ground 3**:  IAC – No Relief Sought for Speedy Trial Violation

In his third ground, Petitioner Collins asserts his pre-trial counsel "was ineffective in her failure to seek relief under Speedy Trial Rule 3.191 Fla. R. Crim. P. Violation."  ECF No. 1 at 13.  As indicated in the analysis of Grounds 1, 2, and 4, *supra*, the record also reflects that at a trial court proceeding on September 20, 2018, Collins' then-counsel waived speedy trial.  Ex. 4.  As also indicated in the analysis, *supra*, the delay in this case concerns the time period prior to Collins' arrest or indictment, thus "the Speedy Trial Clause is inapplicable."  Stoner, 751 F.2d  at 1541.  *See, e.g.*, U.S. v. Butler, 792 F.2d 1528, 1533 ("The sixth amendment right to a speedy trial applies only after a defendant has been arrested, charged, or indicted." (citing Marion, 404 U.S. at 312-13)).

Further, assuming Collins' bases this IAC claim on delay other than the speedy trial issue, as also explained in the analysis above, nothing indicates the pre-arrest delay prejudiced the defense or the State intentionally delayed prosecuting the case and arresting Collins to gain a tactical advantage. Thus, Collins has not shown defense counsel had a meritorious basis to challenge his prosecution on due process grounds.

Based on the foregoing, Collins' pre-trial counsel did not perform deficiently in not raising a speedy trial claim or not challenging his

prosecution on due process grounds based on pre-arrest delay.    *See* Strickland, 466 U.S. at 694, 697.  This ground should be denied.

## Conclusion

Petitioner Collins is not entitled to federal habeas relief.    It is respectfully **RECOMMENDED** that his § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.  The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The

parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 14, 2024.

<u>S/  Martin A. Fitzpatrick</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the</u>**

**electronic docket is for the Court's internal use only and does not control**.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.